

ORIGINAL
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION
2009 MAY 26 PM 12:30
CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| **RAYMOND KEITH SONGER, CROX ALVARADO, VICTOR ARRINGTON, GEORGE E. EATON, JR., DANIEL GARCIA JR., DEBRA SUE GARRISON, JOSE RAMON GUILAMO, LARRY HAZELTON, ANTRONE HENDERSON, SANDRA K. HENDERSON, DAVID CLINTON HENLEY, JEFFERY G. HINES, JOHNNY ROBERT JARVIS, EDDIE JONES, ERIC C. MATTHEWS, BRIAN ALAN MCGLOTHLIN, KAREN SUE PARENT, MONICA LENISE PERVIS, BRENT UNDRA ROBERSON, BOBBY JOE SCHRODER, JOSHUA ANDREW VAN PATTEN, FELIX VASQUEZ COURTLAND DALE WALLACE, AND PERRY SCOTT WIGGINS individually and on behalf of other employees similarly situated** | § | |
| **Plaintiffs** | § | |
| **v.** | § | **CIVIL ACTION NO. 4:08-cv-00319**-A |
| **DILLON RESOURCES, INC., SUNSET ENNIS, INC. d/b/a/ SUNSET WAXAHAXIE, INC., and SUNSET LOGISTICS, INC.** | § | **JURY TRIAL DEMANDED** |
| **Defendants** | § | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE**
**IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

**I. INTRODUCTION** .......... 1

**II. STANDARD OF REVIEW** .......... 2

**III. ARGUMENTS AND AUTHORITIES** .......... 3

**A. Actual Participation in Interstate Transportation, and Not the Reasonable Expectation of Interstate Transportation, is the Legal Test for Exemption.** .......... 3

1. The Exemption Requires Either Transportation Across State Lines or Transportation in the Flow of Interstate Commerce .......... 3

2. Defendants Lack Sufficient Evidence of the Reasonable Expectation of Interstate Transportation. .......... 8

a. Plaintiffs Have No Idea Where the Rocks Come From, and Picking Up Materials at the Dallas Rail Does Not Put Them on Notice. .......... 8

b. Informing an Employee that He Must Comply with All Federal Department of Transportation Guidelines is not Equivalent to Informing Him that He Will in Fact Drive Interstate. .......... 9

**B. Plaintiffs' Trips from the Dallas Rail Terminal to Points in Texas Are Not Interstate Transportation.** .......... 10

1. Transportation Between Points in a Single State is Not in Interstate Transportation Unless It Reaches a Specific Destination Intended by an Out of State Shipper. .......... 10

2. Defendants Failed to Prove that TXI Intended a Specific Destination Beyond the Transportation From the Dallas Rail Terminal. .......... 12

a. Whether a single shipper has control over the inbound and outbound movements to and from the warehouse. .......... 13

b. Whether the shipments are made pursuant to specific orders or customer estimates of need which predict how much product will eventually be delivered to *each customer*. .......... 13

c. How many customers the storage facility serves. .......... 14

d. How rapidly the product moves through the storage facility. .......... 14

e. Whether the shipment is made pursuant to a storage in transit provision in an appropriate tariff. ........ 14

f. Whether the product goes through additional processing or manufacture at the storage facility. ........ 15

**C. Plaintiffs Lack Sufficient Direct Interstate Transportation to be Exempt from Overtime.** ........ 15

1. The Few Interstate Trips Alleged by Defendants are *De Minimis*. ........ 15

2. The Few Interstate Trips Alleged by Defendants Do Not Cover the Relevant Time Period. ........ 16

# TABLE OF AUTHORITIES

## Cases

*Barefoot v. Mid-America Dairymen*, 16 F.3d 1216, 1994 WL 57686 .......... 2, 4, 5
*Brennan v. Texas City Dike and Marina, Inc.*, 492 F.2d 1115, 1117 (5th Cir. 1974) ... 3, 15
*Central Freight Lines v. I.C.C.*, 899 F.2d 413, 419-420 (5th Cir. 1990) .......... 10
*Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984) .......... 6, 7
*Christensen v. Harris County*, 529 U.S. 576, 587 (2000) .......... 6
*Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000) .......... 3
*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) .......... 3
*Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966) .......... 3
*Marshall v. Sundial Associates*, 588 F.2d 120, 122 (5th Cir. 1979) .......... 3
*Merchants Fast Motor Lines, Inc. v. I.C.C.* 5 F.3d 911, 917 (5th Cir. 1993) .......... 10
*Morris v. McComb* .......... 4
*Pyramid Motor Freight Corp. v. Ispass*, 330 U.S. 695, 708-709 (1947) .......... 15
*Siller v. L & F Distributors*, 109 F.3d 765 .......... 7, 10, 11, 13, 14, 15
*Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th Cir. 1992) .......... 3
*Texas v. U.S.*, 866 F.2d 1546, 1560 (5th Cir. 1989) .......... 10, 13
*Wirtz v. C&P Shoe Corp.*, 336 F.2d 21, 29-30 (5th Cir. 1964) .......... 3, 16

## Statutes

13501 .......... 7, 8
13502 .......... 7, 8
29 U.S.C. 213(b)(1) .......... 7, 8
49 U.S.C. 31502 .......... 7, 8

## Other Authorities

DOT's Notice of Interpretation, 46 Fed. Reg. 37902, 37903 (1981) .......... 6

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RAYMOND KEITH SONGER, CROX ALVARADO, VICTOR ARRINGTON, GEORGE E. EATON, JR., DANIEL GARCIA JR., DEBRA SUE GARRISON, JOSE RAMON GUILAMO, LARRY HAZELTON, ANTRONE HENDERSON, SANDRA K. HENDERSON, DAVID CLINTON HENLEY, JEFFERY G. HINES, JOHNNY ROBERT JARVIS, EDDIE JONES, ERIC C. MATTHEWS, BRIAN ALAN MCGLOTHLIN, KAREN SUE PARENT, MONICA LENISE PERVIS, BRENT UNDRA ROBERSON, BOBBY JOE SCHRODER, JOSHUA ANDREW VAN PATTEN, FELIX VASQUEZ COURTLAND DALE WALLACE, AND PERRY SCOTT WIGGINS individually and on behalf of other employees similarly situated

Plaintiffs

v.

DILLON RESOURCES, INC., SUNSET ENNIS, INC. d/b/a/ SUNSET WAXAHAXIE, INC., and SUNSET LOGISTICS, INC.

Defendants

§ CIVIL ACTION NO. 4:08-cv-00319

§ JURY TRIAL DEMANDED

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Defendants argue three different factors in support of applying the Motor Carrier Exemption: (1) Plaintiffs allegedly had a reasonable expectation of participating in

interstate transportation, (2) Plaintiffs allegedly moved materials from the Dallas Rail Terminal to other points in Texas as part of interstate transportation, and (3) one or two trips across state lines by a few Plaintiffs allegedly makes all Plaintiffs exempt at all times. Neither the law nor the facts support any of these theories of exemption.

As explained below, the law does not provide for exemption in the absence of actual participation in interstate transportation, and so the reasonable expectation of interstate transportation is not sufficient. In any event, the record does not show either events or communications which would give the Plaintiffs a reasonable expectation of interstate transportation.

For transportation within a single State, such as Texas, to be part of interstate transportation, the materials moved within Texas must have been intended for the specific destination reached by Plaintiffs. Defendants' declarations about Plaintiffs' alleged pickups at the TXI Dallas Rail Terminal are not sufficient to show the intent required to make Plaintiffs' intrastate trips a part of interstate transportation.

Defendants' Motion and Appendix shows that most Plaintiffs did not have a direct trip across state or national boundaries, and those few Plaintiffs who did have interstate trips lack these trips at sufficient intervals to be exempt throughout the relevant time period. For the reasons which follow, Plaintiffs respectfully request that the Court deny Defendants' Motion for Summary Judgment.

## II. STANDARD OF REVIEW

Exemptions to the FLSA are narrowly construed against the employer, who has the burden of proving that the exemption applies. *Barefoot v. Mid-America Dairymen*, 16 F.3d 1216, 1994 WL 57686 at *2; *Smith v. City of Jackson, Miss.*, 954 F.2d 296, 298 (5th

Cir. 1992); *Idaho Sheet Metal Works, Inc. v. Wirtz*, 383 U.S. 190, 206 (1966); *Marshall v. Sundial Associates*, 588 F.2d 120, 122 (5th Cir. 1979); *Brennan v. Texas City Dike and Marina, Inc.*, 492 F.2d 1115, 1117 (5th Cir. 1974). Thus, Defendants are not entitled to summary judgment on the motor carrier exemption unless Defendants can prove that it applies. *Id.* Any genuine ambiguities in the law governing the exemption must be resolved in favor of the Plaintiffs as employees. *Id.*

Where, as here, the Defendants move for summary judgment on an affirmative defense for which Defendants bear the burden of proof, each of the Defendants "must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in [its] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)(emphasis in original). In considering a summary judgment motion, the courts "view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Crawford v. Formosa Plastics Corp.*, 234 F.3d 899, 902 (5th Cir. 2000).

## III. ARGUMENTS AND AUTHORITIES

### A. Actual Participation in Interstate Transportation, and Not the Reasonable Expectation of Interstate Transportation, is the Legal Test for Exemption.

1. The Exemption Requires Either Transportation Across State Lines or Transportation in the Flow of Interstate Commerce.

Defendants argue that Plaintiffs are exempt even without regard to whether they engaged in interstate transportation, because Plaintiffs *could have been* called upon to do such transportation at any time. (Docket No. 71, p. 38, clerk's pagination). Defendants presume the wrong legal standard in an attempt to lower the burden that they must satisfy to prove the Motor Carrier Exemption. In Plaintiffs' Motion for Partial Summary

Judgment, Plaintiffs already summarized the legal authorities showing that actual participation in interstate transportation, either directly or as part of a larger interstate movement, is required for exemption. (Docket No. 76-2, pp.9-17). Plaintiffs hereby incorporate Section III.A of their Motion for Partial Summary Judgment into this brief by reference. *Id.* Contrary to Defendants' Motion, the Supreme Court's decision in *Morris v. McComb* does not stand for the proposition that a driver is exempt based on the reasonable expectation of interstate transportation. *Id* (Plf. PMSJ) at p.13.

However, a few arguments raised by Defendants' Motion deserve particular attention. First, Defendants rely on the Northern District's decision in *Barefoot v. Mid America Dairymen*, 826 F.Supp. 1046, 1049 (N.D. Tex. 1993) for the proposition that employees of a motor carrier who are required to maintain logs and take tests in compliance with DOT regulations are "subject to" driving in interstate commerce regardless of whether they actually do so, and thus exempt. 826 F.Supp. 1050; Docket No. 71, p.37. However, on appeal, the Fifth Circuit in *Barefoot* specifically stated that "As noted above, the employee himself must also be engaged in interstate commerce before the Secretary of Transportation has jurisdiction over him, and his employment must directly affect the safety of operation of vehicles on the public highways . . . . Therefore, the sole remaining question is whether the plaintiffs engaged in interstate transportation-i.e., the actual transport of goods across state lines or the intrastate transport of goods in the flow of interstate commerce." *Barefoot v. Mid-America Dairymen*, 16 F.3d 1216, 1994 WL 57686 at *3 (5th Cir. 1994). Thus, *Barefoot* stands for the proposition that the requirement of actual interstate transportation can be satisfied by transportation within a single state, where such transportation is part of a larger interstate

movement, commenced or completed by other persons. *Id.* The language of *Barefoot* expressly requires more than the mere "reasonable expectation" of interstate transportation. *Id.*

Defendants rely on the Department of Labor's Regulations at 29 C.F.R. 782.2(b)(3) for the proposition that a driver can be exempt in periods when he lacks interstate transportation, if his position is such that he "could be called upon" to make an interstate trip. However, 29 C.F.R. 782.2(b)(3), by its plain language, applies only to employees *regularly engaged* in exempt activities, and simply extends the exemption to periods in between such work as well. 29 C.F.R. 782.2(b)(3). The section quoted by Defendants is followed by this clarification: "This general rule assumes that the activities involved in the *continuing* duties of the job in *all such workweeks* will include activities which have been determined to affect directly the safety of operation of motor vehicles on the public highways in *transportation in interstate commerce*." *Id* (emphasis added).

The regulations go on to state that an employee whose activities only occasionally or sporadically require him to affect the safety of interstate transportation, will be exempt "only in those workweeks when he engages in such activities." 29 C.F.R. 782.2(b)(4). Thus, the regulations allow a driver who regularly transports materials in interstate commerce to be exempt during occasional lapses in such transportation. 29 C.F.R. 782.2(b)(3). Since intrastate transportation provides no basis for exemption (see 29 C.F.R. 782.7(b)(1), (c); 29 C.F.R. 782.3(b); 29 C.F.R. 782.2(d)) a driver who works primarily in intrastate transportation is not regularly engaged in exempt activities. When such a driver takes a rare interstate trip, the driver becomes exempt only for the week in which such a trip occurs. 29 C.F.R. 782.2(b)(4).

Thus, 29 C.F.R. 782.2(b)(3) does not stand for the proposition that a driver who went out of state once or twice could be exempt for an unlimited period of time thereafter, merely because he *could have been* called upon to do interstate transportation. It is reasonable to interpret section (b)(3) as applying to regular interstate drivers, since a driver is not "likely to be called upon" to participate in interstate transportation, unless he does so regularly.

Defendants rely on the DOT's Notice of Interpretation, 46 Fed. Reg. 37902, 37903 (1981) the DOL's Wage-Hour Field Operations Handbook, and a DOL Opinion Letter from 2006 for the proposition that a driver may be exempt even without participation in interstate transportation if he *could have been* called upon to drive interstate. (Docket No. 71, pp.38-40). Plaintiffs observe that none of these authorities are equal in weight to the Code of Federal Regulations. *Christensen v. Harris County,* 529 U.S. 576, 587 (2000)(holding that there is no *Chevron* deference for statutory interpretations found in opinion letters, policy statements, agency manuals, and enforcement guidelines, because these are not equal to regulations). Regulations such as 29 C.F.R. 782.7(b)(1), (c); 29 C.F.R. 782.3(b); 29 C.F.R. 782.2(d), however, which expressly deny exempt status to intrastate commercial drivers, are entitled to special deference as interpretations of the FLSA by the Department of Labor. *See Chevron v. Natural Resources Defense Council*, 467 U.S. 837, 844 (1984)(holding that interpretations of a statute by an agency that administers it are entitled to special weight in the Court's interpretation). It follows that where the Department of Labor's Regulations conflict with its own handbook, opinion letters, or policy statements from the Department of Transportation, the Regulations prevail.

Thus, because the regulations clearly exclude intrastate drivers from the scope of the Motor Carrier Exemption, the "possibility" of interstate transportation which does not actually occur cannot be used to make intrastate drivers exempt.

It is important to note that the very Notice of Interpretation on which Defendants rely appears to hold that there must be some interstate transportation before the "could have been called upon" reasoning applies. *Notice of Interpretation*, 46 FR 37902, at 37903 (1981 WL 115508)(stating "It is clear that evidence of several interstate trips in a short period of time is insufficient to support a finding of jurisdiction for an unlimited period").

The Courts must honor the plain language of a statute where it is not ambiguous. *Chevron* at 842-843. Since the FLSA exemption statute incorporates provisions of the Motor Carrier Act which apply to transportation across state or national boundaries, this is a plain threshold requirement for the FLSA exemption. 29 U.S.C. 213(b)(1); 49 U.S.C. 31502, 13501, 13502. Compliance with this statutory prerequisite cannot be satisfied by the mere possibility of compliance. Of course, transportation within one state can be a *component* of transportation across state or national boundaries, but this requires a specific relationship between the various segments of the journey which cannot be satisfied by an employee's receipt of a drug test policy or a federal motor carrier handbook. *Siller v. L & F Distributors*, 109 F.3d 765, at *1 (5th Cir. 1997).

Thus, it is simply irrelevant that Plaintiffs had Class A Commercial Drivers' Licenses, were required to submit to background investigations, were required to take a road test, were required to pass a physical exam, were issued a copy of the FMCSR pocket handbook, studied the contents of federal motor regulations, or made records of

their hours of work, as Defendants claim. (Docket No. 71, pp.7-9). None of these activities, even if required by the Department of Transportation, satisfy the statutory prerequisite of interstate transportation required for the Motor Carrier Exemption. 29 U.S.C. 213(b)(1); 49 U.S.C. 31502, 13501, 13502.

2. <u>Defendants' Lack Sufficient Evidence of the Reasonable Expectation of Interstate Transportation</u>.

Even assuming *en arguendo* that a Plaintiff could be exempt based on the continuing possibility of engaging in interstate transportation, Defendants have not shown that this possibility, or reasonable expectation, was more than speculative. The Plaintiffs' trips from the Dallas Rail Terminal to other points in Texas do not constitute transportation in interstate commerce, for the reasons shown in Section B. Otherwise, according to Defendants' motion, only eight of the twenty-four plaintiffs had any trips outside of Texas. (Docket No. 71, pp.14-27) Among those eight, three Plaintiffs had only one interstate trip in their entire employment, another had only two trips, yet another had only one trip outside of his first week. *Id.*

a. Plaintiffs Have No Idea Where the Rocks Come From, and Picking Up Materials at the Dallas Rail Does Not Put Them on Notice.

These interstate trips do not create a reasonable expectation of interstate transportation for the sixteen Plaintiffs who served entirely without interstate trips. Even the Department of Transportation's Notice of Interpretation, relied on by Defendants as the source of the "reasonable expectation" theory, denies that one or two interstate trips can create exemption for an indefinite period of time thereafter. *Notice of Interpretation*, 46 FR 37902, at 37903 (1981 WL 115508). These trips also cannot retroactively create a reasonable expectation of interstate transportation for periods of employment prior the

time in which they occurred. *Id* at 37903 (indicating that exemption exists for four months *after* interstate transportation).

b. Informing an Employee that He Must Comply with All Federal Department of Transportation Guidelines is not Equivalent to Informing Him that He Will in Fact Drive Interstate.

Even if the "could have been called upon" standard were valid, the current state of the record does not establish, as a matter of law, that the Plaintiffs had a reasonable expectation of interstate transportation throughout their entire employment. Informing an employee that he must comply with all federal Department of Transportation guidelines is not equivalent to informing him that he will in fact drive interstate. On the contrary, Defendants advertise that ninety-five percent (95%) of their operations are in Texas. (Docket No. 77-2, p.18); Plf. Resp. App. pp.16-17 (*Van Til Depo*, pp.187-188, authenticating internet pages). Defendants also promised Plaintiffs and their fellow employees that they would be "home every day" and either told them that they would not have to do interstate driving, or failed to discuss it. Plf. Resp. App. pp.20-51. With most Plaintiffs, the possibility of interstate driving was not discussed. *Id.* Defendants testified that some employees were given notations in their time records indicating that they were allowed to use the higher maximum hours of service regulations reserved for intrastate carriers, which permit longer shifts than are allowed for interstate carriers. Plf. Resp. App. pp.12-13 (*Van Til depo*, pp.131-132). This suggests that some employees drove under the premise that they were intrastate drivers only. These facts raise at least a genuine issue of material fact on whether either Plaintiffs or Defendants reasonably expected that Plaintiffs would perform interstate transportation throughout the terms of their employment.

**B. Plaintiffs' Trips from the Dallas Rail Terminal to Points in Texas Are Not Interstate Transportation.**

1. Transportation Between Points in a Single State is Not in Interstate Transportation Unless It Reaches a Specific Destination Intended by an Out of State Shipper.

A commercial driver can participate in interstate transportation without ever crossing state or national boundaries, if the driver moves materials within one state for the purpose of completing or facilitating a larger interstate movement. *Siller v. L & F Distributors*, 109 F.3d 765, at *1 (5th Cir. 1997). Thus, it is possible for goods to be brought by railroad (or other means) into Texas, deposited at a warehouse or storage facility, and then distributed from the warehouse to consumers in Texas by trucks whose routes are contained entirely within Texas. *Siller*, at *3.

To determine whether the movement of the trucks is "part of" the interstate journey that brought the goods to Texas, or a separate intrastate journey, requires examining the intent of the shipper at the time that the goods were sent to Texas. *Siller* at *2; *Merchants Fast Motor Lines, Inc. v. I.C.C.* 5 F.3d 911, 917 (5th Cir. 1993); *Central Freight Lines v. I.C.C.*, 899 F.2d 413, 419-420 (5th Cir. 1990). The courts in this jurisdiction have used various factors in determining the shipper's intent, but still look at the "totality of the circumstances." *Siller*, at *2; *Texas v. U.S.*, 866 F.2d 1546, 1560 (5th Cir. 1989). Where the out of state shipper "intended" the ultimate destination reached by the local truck driver, at the time of shipment to Texas, the local driver's trip is part of the interstate trip. *Id.* Otherwise it is not. *Id.*

"Transportation confined to points in a single state from a storage terminal of commodities which have had prior movement by rail, pipeline, motor, or water from an origin in a different state is not in interstate or foreign commerce . . . if the shipper has no

fixed and persisting transportation intent beyond the terminal storage point at the time of shipment." 29 C.F.R. 782.7(b)(2)(adopting a finding of the I.C.C. under the statutory predecessor to MCA). This means that Defendants cannot characterize Plaintiffs' trips as interstate transportation without evidence that the out of state shipper intended the specific destination which was finally reached by Plaintiffs in running their local routes.

In determining whether an out of state shipper intends the local distribution of goods to be interstate or intrastate transportation, the Fifth Circuit has looked at such factors as:

(1) "whether a single shipper has control over both the inbound and outbound movements to and from the warehouse;

(2) whether the shipments are made pursuant to specific orders or customer estimates of need which predict how much product will eventually be delivered to *each customer*;

(3) how many customers the storage facility serves;

(4) how rapidly the product moves through the storage facility;

(5) whether the shipment is made pursuant to a storage in transit provision in an appropriate tariff; and

(6) whether the product goes through additional processing or manufacture at the storage facility." *Siller*, at *2.

The Department of Labor's regulations expressly reject a finding that local distribution is part of interstate transportation, where the following factors are present:

(i) "At the time of shipment there is *no specific order* being filled for a *specific quantity* of a given product to be moved through to *a specific destination*

beyond the terminal storage,

(ii) the terminal storage is a distribution point or local marketing facility from which specific amounts of the product are sold or allocated, and

(iii) transportation in the furtherance of this distribution within the single State is specifically arranged only *after* sale or allocation from storage." 29 C.F.R. 782.7(b)(2) (emphasis added).

The DOL adds that "Accordingly, employees engaged in such transportation are not subject to the Motor Carrier Act and therefore not within the section 13(b)(1) exemption. They may, however, be engaged in commerce within the meaning of the Fair Labor Standards Act." *Id.*

2. Defendants Failed to Prove that TXI Intended a Specific Destination Beyond the Transportation From the Dallas Rail Terminal.

There is a lack of competent summary judgment evidence to support Defendants' argument that Plaintiffs collected sand, gravel, and similar materials from TXI Inc.'s Dallas Rail Terminal and delivered it to TXI's Ready-Mix concrete making plants in Texas. (Docket No. 71, p.37). Defendants further argue that TXI shipped these materials from Oklahoma to the Dallas Rail Terminal with the specific intent that the materials would be distributed to TXI's Ready-Mix concrete making plants, so that the interstate movement allegedly encompasses the trips taken by the Plaintiffs. *Id.*

Defendants overstate the evidence. The declaration of Rodney Pruitt, Dallas Rail Terminal Manager, establishes only that TXI intended some of the materials shipped to Dallas to be consumed by its concrete plants, as a group. (Docket No. 73, Def. MSJ App. pp.496-497, Defendants' pagination). The evidence does not establish how many concrete plants TXI has, or that TXI knew which plant or location would receive the

materials at the time that the materials were shipped to Dallas. *Id.* In this situation, the regulations require orders for specific quantities from specific concrete plants, before local distribution can be part of interstate transportation. 29 C.F.R. 782.7(b)(2). Such orders are not present in the record.

Plaintiffs turn now to each of the factors considered by the Fifth Circuit in deciding whether local distribution is part of interstate transportation, remembering that these factors are not exhaustive and that the entire totality of the circumstances must be considered. *Siller*, at *2; *Texas* at 1560.

a. Whether a single shipper has control over the inbound and outbound movements to and from the warehouse. *Siller* at *2.

In this case the materials are brought into the Dallas Terminal by TXI's railroad, and taken out again by "outside trucking companies". (Docket No. 73, Def. MSJ App. pp.496-497, Defendants' pagination). This is not a situation in which the persons in charge of local transportation are employees of the same company that brought the materials into the terminal. *Id.* The record also does not establish whether TXI's Ready-Mix Plants are separately incorporated, and whether the ownership of the materials thus changes corporate owners at the point of arrival. It follows that the record does not establish as a matter of law that a single shipper has control over the inbound and outbound movements to and from the Dallas Rail Terminal.

b. Whether the shipments are made pursuant to specific orders or customer estimates of need which predict how much product will eventually be delivered to *each customer*. *Siller* at *2.

In this case the record does not establish that TXI anticipates delivery to a specific concrete plant or location, as opposed to all of its plants generally, when shipping materials to the Dallas and Celina Terminals. Thus, even if TXI bases its shipments to

Dallas on collective "demand" from its internal concrete plants, it does not follow that TXI predicts how much will be moved to each plant or "each customer" as the Fifth Circuit expects for interstate transportation.

c. How many customers the storage facility serves. *Siller* at *2.

The Defendants present no evidence on this point. The obvious implication of this factor is, once again, that TXI cannot know the specific destination of the materials if they are allocated among many recipients upon arrival. The declaration of Rodney Pruitt does not indicate how many customers the Dallas or Celina Terminals serve, or how many TXI concrete plants they serve. (Docket No. 73, Def. MSJ App. pp.496-497, Defendants' pagination).

d. How rapidly the product moves through the storage facility. *Siller* at *2.

The declaration of Rodney Pruitt indicates that TXI "attempts" to avoid stockpiling materials for long periods of time. (Docket No. 72, Def. MSJ App. pp.496-497). However, the attached photographs of the TXI rail terminals show piles of materials much larger than the Plaintiffs' trucks. Plf. Resp. App. pp.90-111 (*David Glenn Decl.*, with photographs). With the present record, there is at least a genuine issue of material fact as to whether the materials are in fact stored for long periods prior to being claimed or collected.

e. Whether the shipment is made pursuant to a storage in transit provision in an appropriate tariff. *Siller* at *2.

Defendants present no evidence of whether the materials are shipped to Dallas or Celina in accordance with any particular agreement regarding what will be done with them at the Dallas Terminal. This factor is clearly not established as a matter of law.