IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF
FILED

JUN 1 9 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

RAYMOND KEITH SONGER, ET AL.,          §
                                       §
          Plaintiffs,                  §
                                       §
VS.                                    §     NO. 4:08-CV-319-A
                                       §
DILLON RESOURCES, INC., ET AL.,        §
                                       §
          Defendants.                  §

MEMORANDUM OPINION
and
ORDER

This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq ("FLSA").[1] Plaintiffs are a group of twenty-two truck drivers[2] who are or, during the relevant time period, were employed by defendants, Dillon Resources, Inc. ("Dillon"), Sunset Logistics, Inc. ("Sunset Logistics"), and Sunset Ennis, Inc. ("Sunset Ennis"). Plaintiffs contend that although they regularly worked more than forty hours per week, defendants failed to pay them at one and one-half times their regular rate

_____

[1] Defendants removed this case, originally filed in state court, to this court on May 14, 2008.

[2] The lawsuit originated with twenty-six plaintiffs. Felix Vasquez was added as a plaintiff on July 23, 2008, while on April 29, 2009, the court granted the voluntary non-suit as to James Todd. Concurrent with this order, the court is granting defendants' motions to dismiss claims of Jeffery Hines and Brent Roberson. Following are the plaintiffs who remain at the time of the filing of the summary judgment motions: Raymond Songer, Crox Alvarado, Victor Arrington, George Eaton, Jr., Daniel Garcia, Jr., Debra Sue Garrison, Jose Ramon Guilamo, Larry Hazelton, Antrone Henderson, Sandra K. Henderson, Daniel Clifton Henley, Johnny Jarvis, Eddie Jones, Eric Matthews, Brian Alan McGlothin, Karen Sue Parent, Monica Lenise Pervis, Bobby Joe Schroeder, Joshua Van Patten, Courtland Wallace, and Perry Wiggins.

for all hours worked over forty each week as required by the
FLSA. Plaintiffs have moved for partial summary judgment as to
defendants' affirmative defense of exemption from the
requirements of the FLSA, while defendants have moved for summary
judgment on the affirmative defense that plaintiffs are exempt
from the FLSA's overtime provisions by 29 U.S.C. § 213(b)(1),
commonly referred to as the Motor Carrier Act exemption. Each
party filed responses and subsequent replies. Having considered
the motions, responses and replies of each party, as well as the
summary judgment record and pertinent legal authorities, the
court has concluded that the motions should be held in abeyance
while the parties are afforded an opportunity to provide
additional evidence and briefing on the subjects set forth
herein.

I.

Facts

The facts set forth below are undisputed in the summary
judgment record:

Dillon is a staff leasing company that hires truck drivers
and assigns them to work for trucking company clients, including
Sunset Logistics and Sunset Ennis, pursuant to written staff
leasing agreements. Under the terms of the agreements, Dillon and

2

the trucking companies jointly share responsibilities for the
truck drivers, including plaintiffs, and consider themselves
joint employers of the drivers. Sunset Logistics and Sunset Ennis
are responsible for the day-to-day operational control over the
truck drivers, while Dillon is responsible for their training, as
well as for the payment of wages and payroll taxes.

Sunset Logistics is primarily a logistical support company,
providing logistical support to other, third-party trucking
companies, including Sunset Ennis. It also engages in some
trucking operations, for which it has been authorized since 2000
as a common carrier of property by motor vehicle in interstate or
foreign commerce by the U.S. Department of Transportation
("DOT"), Federal Motor Carrier Safety Administration.

Sunset Ennis is an interstate trucking company, based in
Waxahachie, Texas, authorized by the DOT to engage in
transportation as a common carrier of property by motor vehicle
in interstate or foreign commerce.

Dillon hired plaintiffs as truck drivers and assigned them
to drive trucks for Sunset Logistics and Sunset Ennis. Plaintiffs
hired before January 19, 2007, were assigned to drive for Sunset
Logistics. In January 2007, Sunset Logistics transitioned to a
logistical support company as its primary business, and at that

3

time Dillon reassigned drivers from Sunset Logistics to Sunset

Ennis. During their entire employment, plaintiffs drove

commercial trucks with a gross vehicle weight rating of 26,001

pounds or more, hauling construction materials for Sunset Ennis

and, as to some plaintiffs, Sunset Logistics.

Truck drivers assigned to Sunset Logistics or Sunset Ennis

transport construction materials within the state of Texas; some

drivers also transport aggregate and other construction materials

across state lines into other states, including Oklahoma, and

from other states into Texas.

Truck drivers assigned to Sunset Ennis and Sunset Logistics

also transport construction materials for their customer, TXI,

Inc. ("TXI"). TXI owns and operates aggregate plants in Oklahoma,

as well as several ready-mix concrete plants within Texas, and

orders aggregate from its aggregate plant in Oklahoma for use in

its ready-mix plants in Texas. TXI then ships aggregate needed

for its ready-mix plants via rail from Oklahoma to the Dallas and

Celina rail terminals.  TXI utilizes outside trucking companies

to haul the aggregate from the Dallas and Celina rail terminals

to its ready-mix plants in Texas, completing the shipment.

During the relevant period, plaintiffs received their load

assignments through the dispatch service provided by Sunset

4

Logistics. The dispatcher notified plaintiffs before the start of their shift of the number of loads they had been assigned, as well as where to pick up and transport the loads.  Plaintiffs did not have "dedicated" routes, but were subject to any route assignment at any time based on several factors, including route optimization, a driver's available hours, and customer requirements. The routes and number of loads assigned changed daily, were distributed on an indiscriminate basis, and were shared by each of the truck drivers.

<p style="text-align:center">II.</p>

## Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986).  The moving party has the initial burden of showing that there is no genuine issue of material fact.  Anderson, 477 U.S. at 256.  The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323-25
(1986). Once the moving party has carried its burden under Rule
56(c), the non-moving party must do more than merely show that
there is some metaphysical doubt as to the material facts.
<u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S.
574, 586 (1986). The party opposing the motion may not rest on
mere allegations or denials of the pleadings, but must set forth
specific facts showing a genuine issue for trial. <u>Anderson</u>, 477
U.S. at 248, 256. To meet this burden, the nonmovant must
"identify specific evidence in the record and articulate the
'precise manner' in which that evidence support[s] [its]
claim[s]." <u>Forsyth v. Barr</u>, 19 F.3d 1527, 1537 (5th Cir. 1994).
An issue is material only if its resolution could affect the
outcome of the action. <u>Anderson</u>, 477 U.S. at 248. Unsupported
allegations, conclusory in nature, are insufficient to defeat a
proper motion for summary judgment. <u>Simmons v. Lyons</u>, 746 F.2d
265, 269 (5th Cir. 1984).

### III.

### Analysis

Section 7 of the FLSA requires that employers compensate
employees engaged in commerce for all hours worked over forty
each week at the rate of one and one-half times their regular

rate. 29 U.S.C. § 207(a)(1). This right is not unlimited, however, as the FLSA also specifically exempts certain employers and/or employees from its overtime requirements. At issue here, 29 U.S.C. § 213(b)(1) exempts from the FLSA's overtime provisions any employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." 29 U.S.C. § 213(b)(1).[3] According to 49 U.S.C. § 31502, the Secretary of Transportation ("Secretary") may prescribe requirements for the "qualifications and maximum hours of service of employees, and safety of operation and equipment of, a motor carrier. . . ." 49 U.S.C. § 31502(b). "The Secretary [] need only possess the power to regulate the employees at issue; it need not actually exercise that power" for the Motor Carrier Act exemption to apply. Barefoot v. Mid-America Dairymen, Inc., 1994 WL 57686 at *2 (5th Cir. Feb. 18, 1994)(citing Levinson v. Spector Motor Serv., 330 U.S. 649, 678 (1947)). Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption. Id.

---

[3] This exemption is commonly known as the "Motor Carrier Act" exemption.

"The exemption of an employee from the hours provisions of the [FLSA] under [29 U.S.C.] section [2]13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The Motor Carrier Act exemption applies only to those employees who

> "(1) [a]re employed by carriers whose transportation of. . .property by motor vehicle is subject to [the Secretary's] jurisdiction under section 204 of the Motor Carrier Act. . ., and (2) engage in activities of a character directly affecting the safety of operation of motor vehicles in the transportation on the public highways of. . .property in interstate or foreign commerce within the meaning of the Motor Carrier Act."

Id. Application of the Motor Carrier Act exemption requires that employees meet both requirements.

The threshold question becomes whether defendants are motor carriers subject to the Secretary's jurisdiction. The definition of "motor carrier" quoted by defendants is "a person providing commercial motor vehicle (as defined in section 31132) transportation for compensation." 49 U.S.C. § 13102(14). Section 31132 defines a commercial motor vehicle as a "self-propelled or towed vehicle used on the highways in interstate commerce to transport passengers or property, if the vehicle-- (A) has a gross vehicle weight rating or gross vehicle weight of at least 10,001 pounds. . . ." Id. at § 31132(1)(A).

8

The court agrees with plaintiffs that defendants have offered no summary judgment evidence that Dillon is a "motor carrier" within the statutory definition. The court also observes that, as of June 2008, the definition in 49 U.S.C. § 13102(14) of "motor carrier" was amended by removal of the word "commercial." As neither party addresses either the retroactivity of this amendment to this case, or whether the change in definition affects the applicability of the Motor Carrier Exemption to Dillon, the court concludes that the parties should specifically address application of these topics in the supplemental filings ordered herein.

Plaintiffs further dispute whether Sunset Logistics is a "motor carrier," contending that although it maintains a DOT license, it has reduced its trucking fleet to one truck and primarily functions as a support service for other carriers. Defendants offer evidence that Sunset Logistics maintains a certification as a common carrier by the DOT, and that it solicits and accepts business in interstate transport. Plaintiffs offer no authority that a minimum number of trucks or trips in interstate commerce is required to be considered a "motor carrier." Under these facts the court concludes that

defendants have met their burden to establish that Sunset

Logistics is a motor carrier.

Plaintiffs apparently do not dispute that Sunset Ennis is a

"motor carrier," and the court agrees. Having concluded that

Sunset Ennis and Sunset Logistics are "motor carriers," the

court must determine if plaintiffs are employed in positions

that affect highway safety in the transportation of property in

interstate commerce. 29 C.F.R. § 782.2(a). All of the

plaintiffs are truck drivers and therefore are employed in

positions that affect highway safety. Levinson, 330 U.S. at

666-68; Barefoot, 1994 WL 57686 at *3; Shew v. Southland Corp.

(Cabell's Dairy Div.), 370 F.2d 376, 380 (5th Cir. 1966).

Not surprisingly, plaintiffs contend that defendants must

also show that an employee personally transported goods across

state lines for the Motor Carrier Act exemption to apply.

Defendants contend that the exemption applies to any driver who

transports, or could have been called upon to transport, goods

in interstate commerce. The court concludes that defendants

have the better argument.

It is well settled that "it is the character of the

activities rather than the proportion of either the employee's

10

time or of his activities that determines the actual need for

the [Secretary's] power to establish reasonable requirements

with respect to qualifications, maximum hours of service,

safety of operation and equipment." Morris v. McComb, 332 U.S.

422, 431 (1947)(internal citations and quotation marks

omitted). Thus, drivers may be subject to the Motor Carrier Act

exemption even where they did not personally participate in

interstate commerce, but could have reasonably been expected to

do so. See id. (all drivers subject to Motor Carrier Act

exemption although two of the forty-three drivers never engaged

in interstate commerce); Barefoot, 1994 WL 57686 at *3 (only

twenty trips across state lines among twenty-six drivers

sufficient to find all participated in interstate commerce);

Brennan v. Schwerman Trucking Co., 540 F.2d 1200 (4th Cir.

1976)(all drivers exempt under Motor Carrier Act exemption even

where not all drove in interstate commerce). This view is

consistent with the Department of Labor's ("DOL") regulations:

> "If the bona fide duties of the job performed by the
> employee are in fact such that he is (or, in the case
> of a member of a group of drivers. . .employed by a
> common carrier and engaged in safety-affecting
> occupations, that he is likely to be) called upon in
> the ordinary course of his work to perform, either
> regularly or from time to time, safety-affecting
> activities of the character described [above], he comes

11

within the exemption in all workweeks when he is
employed at such job."

29 C.F.R. § 782.3.

The reasons for the Supreme Court's holding in <u>Morris</u> are

instructive here. In that case, where the employer was a common

carrier, the Court found that, although interstate transport

constituted less than four per cent of the employer's total

operations, and such out-of-state trips were not distributed

equally to each of the drivers, they were

distributed generally throughout the year and their
performance was shared indiscriminately by the drivers
and was mingled with the performance of other like
driving services rendered by them otherwise than in
interstate commerce. These trips were thus a natural,
integral and apparently inseparable part of the common
carrier service of the petitioner and of his drivers.

<u>Morris</u>, 332 U.S. at 433. On these facts, the court concluded

that, as all drivers' work directly affected safety, the entire

class of drivers came under the Secretary's jurisdiction and thus

the Motor Carrier Act exemption, even though two of the forty-

three drivers never drove out-of-state. This is the situation

presented by defendants: interstate transport, whenever required,

was indiscriminately assigned to any driver, who was expected to

accept the assignment or risk termination. Although plaintiffs

argue that it is the employee's expectation of interstate

12

transport that is controlling, they offer no evidence to support that contention.

Concluding that plaintiffs, as truck drivers, are subject to the Motor Carrier Act exemption, however, does not end the court's inquiry. The court is not persuaded that the exemption bears the unlimited scope and duration defendants have suggested. In support of their respective positions, the parties argue regarding the application and authority of a number of interpretive guides, including an Interpretive Bulletin of the Department of Transportation, Federal Highway Administration, 46 Fed. Reg. 37902, 1981 WL 115508; the DOL Field Operations Handbook; and Opinion Letters of the DOL's Wage and Hour Division. All of these sources, while not controlling or entitled to deference, are "entitled to respect" to the extent they are persuasive or offer guidance. Christensen v. Harris County, 529 U.S. 576, 587-88 (2000); Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944). All of these sources lead to the same conclusion: a driver is subject to the jurisdiction of the Secretary, and thus under the Motor Carrier Act exemption, for a "4-month period from the date of the proof" that he was, or could have been, called upon to engage in interstate commerce. 46 Fed. Reg. 37902, 37903.

13

Although the court concludes that plaintiffs, as drivers for at least one motor carrier, are subject to the Motor Carrier Act exemption to some extent, defendants have failed to adduce summary judgment evidence of the specific application of the exemption as to each plaintiff for these defendants. The summary judgment evidence submitted by defendants sets forth generally the dates of plaintiffs' employment and states generally the number of interstate trips made by that plaintiff. However, defendants have adduced nothing as would show, as to each plaintiff, proof of when he or she was, or could have been, called upon to transport goods in interstate commerce such that the exemption clock began ticking as to that plaintiff.

Defendants submitted summary judgment evidence that purports to be bills of lading or similar types of work tickets showing that various plaintiffs transported goods across state lines or within Texas in the intrastate flow of interstate commerce. Insofar as the court can tell, none of these items show any of the defendants as the employer or trucking company of record. For example, many of the work tickets, under the heading "Carrier," list "Sunset Transp" or, in some cases, "Sunset Trucking." Neither of these entities is a party to this action, nor have defendants pointed the court to any summary judgment evidence

14

explaining the relationship, if any, between them and either of those entities.

The court also has concerns about defendants' summary judgment evidence generally. Defendants' appendices as assembled do not correspond to either the tables of contents or to internal citations to exhibits within affidavits. By way of example, in volume I of the appendix, the affidavit of Edward Brady refers to exhibits A, B, C, etc., attached thereto. The exhibits themselves, however, are tabbed as number 1, 2, 3, etc., making it difficult for the court to identify exactly to which exhibit the affidavit refers. This pattern is repeated as to each affidavit with exhibits. Further, the affidavits contain many conclusory assertions and do not properly authenticate the documents attached thereto as exhibits. As the court would find it helpful for the parties to provide additional briefing and evidence on the limited issues set forth below, it is expected that any additional evidence submitted will be properly assembled and identified and internally consistent. Therefore,

The court ORDERS that plaintiffs' partial motion for summary judgment, and defendants' motion for summary judgment, be, and are hereby, held in abeyance pending further consideration by the

15

court of the parties' supplemental filings ordered below.

The court further ORDERS that by July 1, 2009:

(1) defendants file evidence, in proper form, properly assembled and labeled, showing specific application of the Motor Carrier Act exemption to each plaintiff, including evidence as to the starting point for and continuation of the exemption for each plaintiff, and that defendants provide the court a document, containing applicable argument and authorities, explaining how the evidence submitted establishes the exemption as to that plaintiff;

(2) all parties file documents with the court, containing applicable argument and authorities, as to whether the June 2008 amendment to the definition of "motor carrier" in 49 U.S.C. § 13102(14) is applicable to this case and, whether or not that is the case, as to application of the Motor Carrier Act exemption to Dillon;

(3) to the extent defendants' evidence includes any bills of lading, settlement sheets, or other documents of the type submitted in its appendices in support of its motion for summary judgment, such evidence shall be properly authenticated, and either identify the applicable defendant,

16

or defendants shall provide an explanation as to their relationship with the identified entity;

(4) by 2:00 p.m. on July 8, 2009, the parties file any response they wish to the other party's supplemental filings described above; and,

(5) in order to fully consider the supplemental filings of the parties, the pre-trial conference currently set for 9:00 a.m. on July 6, 2009, be, and is hereby, rescheduled for 9:00 a.m. on July 16, 2009.

SIGNED June 18, 2009.

JOHN McBRYDE