IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

JUL 1 5 2009

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| RAYMOND KEITH SONGER, ET AL., | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | NO. 4:08-CV-319-A |
| | § | |
| DILLON RESOURCES, INC., ET AL., | § | |
| | § | |
| Defendants. | § | |

<u>MEMORANDUM OPINION</u>
and
<u>ORDER</u>

This action arises under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq ("FLSA").[1] Plaintiffs are a group of twenty-one truck drivers[2] who are, or, during the relevant time period, were, employed by defendants, Dillon Resources, Inc. ("Dillon"), Sunset Logistics, Inc. ("Sunset Logistics"), and Sunset Ennis, Inc. ("Sunset Ennis"). Plaintiffs contend that although they regularly worked more than forty hours per week, defendants failed to pay them at one and one-half times their regular rate

_____

[1] Defendants removed this case, originally filed in state court, to this court on May 14, 2008.

[2] The lawsuit originated with twenty-six plaintiffs. Felix Vasquez was added as a plaintiff on July 23, 2008, while on April 29, 2009, the court granted a voluntary dismissal as to James Todd. On June 19, 2009, the court granted defendants' motions to dismiss claims of Jeffery Hines and Brent Robertson, and on July 13, 2009, granted Joshua Van Patten's motion for voluntary dismissal. The plaintiffs who remain as of the date of this order are: Crox Alvarado, Victor Arrington, George Eaton, Jr., Daniel Garcia, Jr., Debra Sue Garrison, Jose Ramon Guilamo, Larry Hazelton, Antrone Henderson, Sandra K. Henderson, Daniel Clifton Henley, Johnny Jarvis, Eddie Jones, Eric Matthews, Brian Alan McGlothin, Karen Sue Parent, Monica Lenise Pervis, Bobby Joe Schroeder, Raymond Songer, Felix Vasquez, Courtland Wallace, and Perry Wiggins.

for all hours worked over forty each week as required by the FLSA. Plaintiffs moved for partial summary judgment as to defendants' affirmative defense of exemption from the requirements of the FLSA, while defendants moved for summary judgment on the affirmative defense that plaintiffs are exempt from the FLSA's overtime provisions by 29 U.S.C. § 213(b)(1), commonly referred to as the Motor Carrier Act exemption.

On June 19, 2009, the court ordered the parties' motions held in abeyance pending receipt of supplemental briefing on the following issues: (1) application of 29 U.S.C. § 213(b)(1), commonly known as the Motor Carrier Act exemption under the Fair Labor Standards Act ("FLSA"), to each plaintiff; (2) whether the June 2008 amendment to the definition of "motor carrier" in 49 U.S.C. § 13102(14) is applicable to this action and, whether or not that is the case, application of the Motor Carrier Act exemption to Dillon. The court, having received and considered the parties' supplemental briefings, the responses thereto, the summary judgment record, and applicable legal authorities, now concludes that defendants' motion for summary judgment should be

granted, and plaintiffs' motion for partial summary judgment should be denied.[3]

I.

Undisputed Facts

The following facts are undisputed in the summary judgment record[4]:

Dillon is a staff leasing company that hires truck drivers and assigns them to work for trucking company clients, including Sunset Logistics and Sunset Ennis, pursuant to written staff leasing agreements. Under the terms of the agreements, Dillon and the trucking companies jointly share responsibilities for the truck drivers, including plaintiffs, and consider themselves joint employers of the drivers. Sunset Logistics and Sunset Ennis are responsible for the day-to-day operational control over the truck drivers, while Dillon is responsible for their training, as well as for the payment of wages and payroll taxes.

---

[3]Also before the court are plaintiffs' "Objections to and Motion to Strike Defendants' Summary Judgment Evidence" and plaintiffs' "Objections to and Motion to Strike Evidence in Defendants' Supplemental Summary Judgment Appendix." Rather than rule specifically on these motions, the court will give the items in question whatever weight and consideration they deserve. Any other motions pending before the court not specifically ruled on herein are denied as moot.

[4]The facts set forth herein are adopted from the statement of facts in defendants' motion for summary judgment and facts provided in defendants' supplemental brief. Other than the specific objections raised in plaintiffs' motions to strike, plaintiffs neither offered their own statement of facts nor objected to defendants'.

Sunset Logistics is primarily a logistical support company, providing logistical support to other, third-party trucking companies, including Sunset Ennis. It also engages in some trucking operations, for which it has been authorized since 2000 as a common carrier of property by motor vehicle in interstate or foreign commerce by the United States Department of Transportation ("DOT"), Federal Motor Carrier Safety Administration.

Sunset Ennis is an interstate trucking company, based in Waxahachie, Texas, authorized by the DOT to engage in transportation as a common carrier of property by motor vehicle in interstate or foreign commerce.

In 2006, Sunset Logistics's truck drivers transported approximately 5,980 loads of construction materials across state lines. In 2007, Sunset Ennis's truck drivers transported approximately 2,000 loads of construction materials across state lines. In 2008, Sunset Ennis's truck drivers hauled approximately 1,000 loads of construction materials across state lines. During the relevant period, Sunset Logistics, on its own behalf and on behalf of Sunset Ennis, solicited and received interstate work from its customers, which required it to

4

dispatch truck drivers across state lines.

Dillon hired plaintiffs as truck drivers and assigned them to drive trucks for Sunset Logistics and Sunset Ennis. Plaintiffs hired before January 19, 2007, were assigned to drive for Sunset Logistics. In January 2007, Sunset Logistics transitioned to a logistical support company as its primary business, and at that time Dillon reassigned drivers from Sunset Logistics to Sunset Ennis. During their entire employment, plaintiffs drove commercial trucks with a gross vehicle weight rating of 26,001 pounds or more, hauling construction materials for Sunset Ennis and, as to some plaintiffs, Sunset Logistics.

Plaintiffs, like all of the truck drivers hired by Dillon, were required to meet DOT and Federal Motor Carrier Safety Regulations ("FMCSR") prior to assuming their driving duties. Plaintiffs were required to have, and did have, a valid Class A Commercial Drivers License ("CDL"); were required to meet the driver qualification requirements of, inter alia, Part 382 and 391 of the FMCSR, including:  (1) meeting the general qualification for commercial truck drivers; (2) submitting to required background and character investigations; (3) submitting to a road test or its equivalent; and (4) submitting to physical

qualifications and examinations including drug-testing requirements.

After they were hired, plaintiffs were required to comply with FMCSR related to recording their hours of service and safety inspections. Plaintiffs completed daily logs recording their hours of service, and were required to complete driver vehicle inspection reports required by the FMCSR.

Truck drivers assigned to Sunset Logistics or Sunset Ennis transport construction materials within the state of Texas; some drivers also transport aggregate and other construction materials across state lines into other states, including Oklahoma, and from other states into Texas.

Truck drivers assigned to Sunset Ennis and Sunset Logistics also transport construction materials for their customer, TXI, Inc. ("TXI"). TXI owns and operates aggregate plants in Oklahoma, as well as several ready-mix concrete plants within Texas, and orders aggregate from its aggregate plant in Oklahoma for use in its ready-mix plants in Texas. TXI then ships aggregate needed for its ready-mix plants via rail from Oklahoma to the Dallas and Celina rail terminals.  TXI utilizes outside trucking companies to haul the aggregate from the Dallas and

6

Celina rail terminals to its ready-mix plants in Texas, completing the shipment.

During the relevant period, plaintiffs received their load assignments through the dispatch service provided by Sunset Logistics. The dispatcher notified plaintiffs before the start of their shift of the number of loads they had been assigned, as well as where to pick up and transport the loads.  Plaintiffs did not have "dedicated" routes, but were subject to any route assignment at any time based on several factors, including route optimization, a driver's available hours, and customer requirements. The routes and number of loads assigned changed daily, were distributed randomly, and were shared by each of the truck drivers.

The plaintiffs' dates of employment with defendants, as well as dates where plaintiffs transported goods across state lines, are as follows[5]:

Crox Alvarado: Employed October 10, 2007 - May 4, 2008. He drove out-of-state November 10, 2007.

Victor Arrington: Employed August 29, 2006 - May 26, 2008.

---

[5]As explained above, plaintiffs hired before January 19, 2007, were assigned to drive for Sunset Logistics. After that date, drivers were reassigned from Sunset Logistics to Sunset Ennis. For those plaintiffs employed by Sunset Logistics prior to January 19, 2007, the court used as the termination date the last day of that plaintiff's employment with Sunset Ennis.

He drove out-of-state on May 11, 14, 16, 21, 22, and 29, 2007, and June 1, 14, 8, 13, 15, 18, and 20, 2007.

George Eaton, Jr.: Employed April 12, 2007 - October 15, 2008.

Daniel Garcia, Jr.: Employed April 8, 2007 - July 9, 2008.

Debra Garrison: Employed November 14, 2007 - May 6, 2008.

Jose Guilamo: Employed August 31, 2007 - April 3, 2008. He drove out-of-state on November 10, 2007.

Larry Hazleton: Employed June 5, 2006 – June 16, 2008. He drove out-of-state on November 10, 2007, and May 9, 2008.

Antrone Henderson: Employed December 3, 2007 - April 2, 2008.

Sandra Henderson: Employed October 30, 2007 - February 5, 2008.

Daniel Clifton Henley: Employed March 27, 2007 - November 4, 2007.

Johnny Robert Jarvis: Employed May 23, 2006 - December 12, 2008. He drove out-of-state on April 25-27 and 30, 2007, May 1-3, 7-9, 16-18, 21-25, and 31, 2007, June 1 and 25, 2007, July 5-6, 9, 13, 16-19, 23-27, and 30-31, 2007, August 1-3, 6-8, 10, 13-17, 20-21, 23-24, and 27-31, 2007, September 10-13, 17-18,

21, 24, and 26-28, 2007, October 1, 4-5, and 8-10, 2007, and November 10 and 13, 2007. He also made out-of-state trips on May 2, 2008, and July 22-24, 2008.

Eddie Jones: Employed November 6, 2006 - April 15, 2009.

Eric Matthews: Employed October 29, 2007 - January 27, 2008.

Brian Alan McGlothin: Employed December 8, 2006 - April 6, 2008.

Karen Sue Parent: Employed June 12, 2007 - June 2008.

Monica Pervis: Employed October 30, 2007 - February 20, 2008.

Bobby Joe Schroeder: Employed December 27, 2006 - April 30, 2008.

Raymond Keith Songer: Employed January 31, 2007 - July 9, 2008. He drove out-of-state on February 11, 2008.

Felix Vasquez: No specific date was given for commencement of employment; however, summary judgment evidence appears to support employment beginning in or around April 2006, and he is currently employed. He drove out-of-state on April 25-27, and 30, 2007, May 1-3, 7-9, 16-18, and 21-25, 2007, June 1 and 25, 2007, July 5, 8-9, 19, 23, 25, 27, and 30-31, 2007, August 1-3,

6-10, 13-14, 20-24, and 27-31, 2007, September 10-14 and 17-21, 2007, October 1-5 and 8-10, 2007, and November 10 and 14, 2007.

Courtland Dale Wallace: Employed June 7, 2007 - May 5, 2008. He drove out-of-state on July 17, 2007.

Perry Wiggins: Employed October 16, 2006 – May 16, 2008.

## II.

### Applicable Summary Judgment Principles

A party is entitled to summary judgment on all or any part of a claim as to which there is no genuine issue of material fact and as to which the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The moving party has the initial burden of showing that there is no genuine issue of material fact. Anderson, 477 U.S. at 256. The movant may discharge this burden by pointing out the absence of evidence to support one or more essential elements of the non-moving party's claim "since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 323-25 (1986). Once the moving party has carried its burden under Rule 56(c), the non-moving party must do more than

10

merely show that there is some metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion may not rest on mere allegations or denials of the pleadings, but must set forth specific facts showing a genuine issue for trial. Anderson, 477 U.S. at 248, 256. To meet this burden, the nonmovant must "identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s]." Forsyth v. Barr, 19 F.3d 1527, 1537 (5th Cir. 1994). An issue is material only if its resolution could affect the outcome of the action. Anderson, 477 U.S. at 248. Unsupported allegations, conclusory in nature, are insufficient to defeat a proper motion for summary judgment. Simmons v. Lyons, 746 F.2d 265, 269 (5th Cir. 1984).

III.

## Analysis

Section 7 of the FLSA requires that employers compensate employees engaged in commerce for all hours worked over forty each week at the rate of one and one-half times their regular rate. 29 U.S.C. § 207(a)(1). This right is not unlimited, however, as the FLSA also specifically exempts certain employers

and/or employees from its overtime requirements. At issue here, 29 U.S.C. § 213(b)(1) exempts from the FLSA's overtime provisions any employee over "whom the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of Section 31502 of Title 49." 29 U.S.C. § 213(b)(1). According to 49 U.S.C. § 31502, the Secretary of Transportation ("Secretary") may prescribe requirements for the "qualifications and maximum hours of service of employees, and safety of operation and equipment of, a motor carrier. . . ." 49 U.S.C. § 31502(b). "The Secretary [] need only possess the power to regulate the employees at issue; it need not actually exercise that power" for the Motor Carrier Act exemption to apply. Barefoot v. Mid-America Dairymen, Inc., 1994 WL 57686 at *2 (5th Cir. Feb. 18, 1994)(citing Levinson v. Spector Motor Serv., 330 U.S. 649, 678 (1947)). Exemptions under the FLSA are construed narrowly against the employer, and the employer bears the burden to establish a claimed exemption. Id.

"The exemption of an employee from the hours provisions of the [FLSA] under [29 U.S.C.] section [2]13(b)(1) depends both on the class to which his employer belongs and on the class of work involved in the employee's job." 29 C.F.R. § 782.2(a). The Motor

Carrier Act exemption applies only to those employees who

> "(1) [a]re employed by carriers whose transportation
> of. . .property by motor vehicle is subject to [the
> Secretary's] jurisdiction under section 204 of the
> Motor Carrier Act. . ., and (2) engage in activities of
> a character directly affecting the safety of operation
> of motor vehicles in the transportation on the public
> highways of. . .property in interstate or foreign
> commerce within the meaning of the Motor Carrier Act."

Id. Application of the Motor Carrier Act exemption requires

that employees meet both requirements.

A. Application of the Motor Carrier Act Exemption

In order to establish the Motor Carrier Act exemption

defendants must first establish that they are "motor carriers"

subject to the Secretary's jurisdiction under the Motor Carrier

Act. 29 U.S.C. § 213(b)(1). The Motor Carrier Act uses the

definition of "motor carrier" found in 49 U.S.C. § 13102(14);

Congress amended this definition in June 2008. Thus, the court

requested additional briefing on whether the June 2008 amendment

was applicable to this action. The court now agrees with the

parties that the principal difference between the pre- and post-

June 2008 amendments to the definition of "motor carrier" is the

elimination of the weight limit, such that a motor carrier using

small vehicles under 10,001 pounds would be subject to the

exemption. As the parties do not dispute that at all relevant

times plaintiffs drove trucks with a gross vehicle weight rating
of at least 26,001 pounds, the amendment appears immaterial to
the outcome of this case.

Defendants' summary judgment evidence shows that Sunset
Logistics maintains a certification as a common carrier by the
DOT, that it solicits and accepts business in interstate
transport, and that it actually transported goods in interstate
commerce. Although plaintiffs contend that Sunset Logistics has
reduced its trucking fleet to one truck and primarily functions
as a support service for other carriers, they offer no authority
that a minimum number of trucks or trips in interstate commerce
is required to be considered a "motor carrier." Under these
facts the court concludes that defendants have met their burden
to establish that Sunset Logistics is a motor carrier.

Plaintiffs apparently do not dispute that Sunset Ennis is a
"motor carrier," and the court agrees. As to whether Dillon is a
"motor carrier" subject to the Motor Carrier Act exemption,
defendants contend, and plaintiffs do not dispute, that the
exemption applies to Dillon because it is plaintiffs' joint
employer. The court agrees. Department of Labor regulations
contemplate that a single individual may be the employee of two

or more employers at the same time. 29 C.F.R. § 791.2(a). The regulations provide that where

> the facts establish that the employee is employed jointly by two or more employers, i.e., that employment by one employer is not completely disassociated from employment by the other employer(s), all of the employee's work for all of the joint employers during the workweek is considered as one employment for purposes of the Act.

Id. Thus, for example, "each employer may...take credit toward minimum wage and overtime requirements for all payments made to the employee by the other joint employer or employers." Id. Here, the staff leasing agreements between Dillon and Sunset Logistics and between Dillon and Sunset Ennis provide for joint responsibility for plaintiffs and clearly delineate each party's responsibility as to the leased employees, such that "employment by one employer is not completely disassociated from employment by the other employer." Sunset Logistics and Sunset Ennis are motor carriers subject to the jurisdiction of the Secretary, and plaintiffs, as drivers, are employed in positions that affect highway safety. Under the facts presented here, the court concludes that Dillon is plaintiffs' joint employer and therefore subject to the Motor Carrier Act exemption. See Moore v. Universal Coordinators, Inc., 423 F.2d 96 (3d Cir.

1970)(truck driver employed by employee-leasing company and leased to motor carrier considered covered by Motor Carrier Act exemption).

B.   Applicability of Motor Carrier Act Exemption to Plaintiffs

Having concluded that defendants are "motor carriers," the court must determine if plaintiffs are employed in positions that affect highway safety in the transportation of property in interstate commerce. 29 C.F.R. § 782.2(a). All of the plaintiffs are truck drivers and therefore are employed in positions that affect highway safety. Levinson, 330 U.S. at 666-68; Barefoot, 1994 WL 57686 at *3.

Plaintiffs contend that defendants must also show that an employee personally transported goods across state lines for the Motor Carrier Act exemption to apply. Defendants contend that the exemption applies to any driver who transports, or could have been called upon to transport, goods in interstate commerce. The court concludes that defendants have the better argument.

It is well settled that "it is the character of the activities rather than the proportion of either the employee's time or of his activities that determines the actual need for

16

the [Secretary's] power to establish reasonable requirements with respect to qualifications, maximum hours of service, safety of operation and equipment." <u>Morris v. McComb</u>, 332 U.S. 422, 431 (1947)(internal citations and quotation marks omitted). Thus, drivers may be subject to the Motor Carrier Act exemption even where they did not personally participate in interstate commerce. <u>See id.</u> (all drivers subject to Motor Carrier Act exemption although two of the forty-three drivers never engaged in interstate commerce); <u>Brennan v. Schwerman Trucking Co.</u>, 540 F.2d 1200 (4th Cir. 1976)(all drivers exempt under Motor Carrier Act exemption even where not all drove in interstate commerce). This view is consistent with the Department of Labor's ("DOL") regulations:

> "I]f the bona fide duties of the job performed by the employee are in fact such that he is (or, in the case of a member of a group of drivers. . .employed by a common carrier and engaged in safety-affecting occupations, that he is likely to be) called upon in the ordinary course of his work to perform, either regularly or from time to time, safety-affecting activities of the character described [above], he comes within the exemption in all workweeks when he is employed at such job."

29 C.F.R. § 782.2(b)(3). Further, the Notice of Interpretation issued by the DOT regarding the Motor Carrier Act exemption,

provides that:

> If jurisdiction is claimed over a driver who has not
> driven in interstate commerce, evidence must be
> presented that the carrier has engaged in interstate
> commerce and that the driver could reasonably have been
> expected to make one of the carrier's interstate runs.

Notice of Interpretation of the Department of Transportation,
Federal Highway Administration, 46 Fed. Reg. 37902, 37903, 1981
WL 115508. See also Reich v. American Driver Serv., Inc., 33
F.3d 1153, 1157 (9th Cir. 1994); Vidinliev v. Carey Int'l, Inc.,
581 F. Supp.2d 1281, 1286 (N.D. Ga. 2008); Chao v. First Class
Coach Co., Inc., 214 F. Supp.2d 1263, 1274-75 (M.D. Fla. 2001).

The reasons for the Supreme Court's holding in Morris are
instructive here. In that case, where the employer was a common
carrier, the Court found that, although interstate transport
constituted less than four per cent of the employer's total
operations, and such out-of-state trips were not distributed
equally to each of the drivers, they were

> distributed generally throughout the year and their
> performance was shared indiscriminately by the drivers
> and was mingled with the performance of other like
> driving services rendered by them otherwise than in
> interstate commerce. These trips were thus a natural,
> integral and apparently inseparable part of the common
> carrier service of the petitioner and of his drivers.

Morris, 332 U.S. at 433. On these facts, the Court concluded
that, as all drivers' work directly affected safety, the entire
class of drivers came under the Secretary's jurisdiction and thus
the Motor Carrier Act exemption, even though two of the forty-
three drivers never drove out-of-state. This is the situation
presented by defendants: interstate transport, whenever required,
was indiscriminately assigned to any driver, who was expected to
accept the assignment or risk termination. Although plaintiffs
argue that it is the employee's expectation of interstate
transport that is controlling, they offer no authority to support
that contention.

Despite concluding that plaintiffs, as truck drivers, are
subject to the Motor Carrier Act to some extent, in the June 19,
2009, order, the court stated that "defendants have adduced
nothing as would show, as to each plaintiff, proof of when he or
she was, or could have been, called upon to transport goods in
interstate commerce such that the exemption clock began ticking
as to that plaintiff." Order at 14. The court now concludes that
defendants' summary judgment evidence establishes that plaintiffs
were subject to the Motor Carrier Act exemption for the duration
of their employment.

The Notice of Interpretation issued by the DOT, regarding

the Motor Carrier Act exemption, provides that

> the **carrier** must be shown to have engaged in
> interstate commerce within a reasonable period of time
> prior to the time at which jurisdiction is in question.
> The **carrier's** involvement in interstate commerce must
> be established by some concrete evidence such as an
> actual trip in interstate commerce or proof, in the
> case of a 'for hire' carrier, that interstate business
> had been solicited. If jurisdiction is claimed over a
> driver who has not driven in interstate commerce,
> evidence must be presented that the **carrier** has engaged
> in interstate commerce and that the driver could
> reasonably have been expected to make one of the
> carrier's interstate runs.

46 Fed. Reg. at 37903, 1981 WL 115508 (emphasis added); <u>see</u>

<u>also</u> <u>Reich</u>, 33 F.3d 1153; <u>Vidinliev</u>, 581 F. Supp.2d at 1286

(application of Motor Carrier Act exemption to be applied for a

four-month period following defendant's actual involvement in

interstate commerce); <u>Dole v. Circle "A" Constr., Inc.</u>, 738 F.

Supp. 1313, 1322 (D. Idaho 1990)(to show application of the

Motor Carrier Act exemption requires proof that the carrier was

engaged in interstate commerce and all drivers could have

reasonably been expected to make interstate trips, considering

four-month rule). Thus, the focus of the inquiry is on when the

carrier/employer engaged in interstate commerce. In this case,

where defendants have provided summary judgment evidence that

they have been continuously engaged in interstate commerce

throughout the relevant period, the court concludes that each

plaintiff became subject to the Motor Carrier Act exemption upon commencement of his or her employment with defendants.

The summary judgment evidence establishes that eight plaintiffs drove across state lines on approximately 173 occasions from at least April 2007 through May 2008.[6] The out-of-state trips occurred every month, sometimes weekly, through November 14, 2007. Another out-of-state trip by one of the plaintiffs occurred in February 2008, and two more occurred in May 2008. Considering only these approximately 173 out-of-state trips by plaintiffs, and considering that every plaintiff was subject to an out-of-state trip from the date of defendants' interstate commerce for a four-month period afterward, defendants have established that plaintiffs at all times could reasonably have been expected to engage in interstate commerce.

As further evidence of actual involvement in interstate commerce, defendants provided the uncontroverted affidavit of Robert Van Til ("Van Til"), president of Sunset Logistics, stating that in 2006, Sunset Logistics transported 5,980 loads across state lines; in 2007, Sunset Ennis transported approximately 2,000 loads across state lines; and in 2008,

---

[6]Defendants' summary judgment evidence also establishes that Sunset Logistics transported goods across state lines through at least October 2006.

Sunset Ennis transported approximately 1,000 loads across state lines. Van Til further stated that Sunset Logistics actively solicits interstate employment on its own behalf and on behalf of Sunset Ennis, and they must be prepared to accept such interstate transport assigned to them. The summary judgment evidence establishes that defendants have been continuously engaged in interstate commerce since at least 2006. Defendants contend, and plaintiffs do not dispute, that no driver has assigned routes, that assignments are made randomly, and that any driver was subject to termination for refusing an assigned load. Although plaintiffs claim they were unaware, prior to employment, that they could have been assigned to interstate transport, they do not dispute that they could have been called upon at any time to do so. Because plaintiffs at any time could have been called upon to drive across state lines, whether or not they actually did so is not dispositive. 46 Fed. Reg. at 37903; see also, e.g., Morris, 332 U.S. at 433-34 (all common carrier's drivers subject to Motor Carrier Act exemption, even those who never crossed state lines); Brennan, 540 F.2d at 1205 (same); Chao, 214 F. Supp.2d at 1274-75.

Additionally, it is undisputed that all of defendants' drivers, including plaintiffs, are required to comply with DOT

and FMCSR prior to assuming driving duties for defendants,
including maintaining a valid Class A CDL and meeting the driver
qualification requirements of relevant portions of the FMCSR.
Although not dispositive, this is some evidence that any driver,
including plaintiffs, could have been called upon at any time to
transport loads across state lines. See, e.g., Chao, 214 F.
Supp.2d at 1275; Garcia v. Pace Suburban Bus Serv., 955 F. Supp.
75 (N.D. Ill. 1996).

Plaintiffs contend that defendants did not distribute out
of state trips indiscriminately, because only eight of the
twenty-one plaintiffs actually drove across state lines.
However, "it is not likely that [] courts intended
indiscriminate assignment to serve as a bright-line test. The
more germane question is whether there is other substantial
evidence that the drivers in question are reasonably expected to
be involved in interstate commerce." Chao, 214 F. Supp.2d at
1275-76. Plaintiffs have offered no summary judgment evidence to
controvert defendants' evidence that the out-of-state trips were
distributed indiscriminately, that no driver had a dedicated

route, and that any driver could have at any time been called upon to make a trip across state lines.[7]

Plaintiffs further object that defendants still have not established the correct identity of the carrier on the bills of lading submitted as part of defendants' supplemental summary judgment evidence. In his affidavit submitted in the supplemental appendix, Van Til explained that some customers have incorrectly identified the carrier on the bills of lading. Van Til explained that, when Sunset Logistics prepares bills of lading and trip tickets to prepare freight bills, if an unfamiliar carrier such as "Sunset Trucking" is listed on the bill of lading, the company examines the truck number and driver number from the bill of lading to identify the correct carrier. Van Til provides examples and states that the remaining bills of lading and trip tickets included represent work actually performed on behalf of Sunset Logistics and Sunset Ennis. The examples provided in the appendix support this explanation, and the court is satisfied that the evidence submitted demonstrates

---

[7]Plaintiffs also ignore defendants' other evidence of interstate commerce. There is no allegation or evidence in the record that the out-of-state trips taken by some of the plaintiffs are the only out-of-state trips taken by any of defendants' drivers during the relevant period. Instead, defendants' evidence is that during 2007-2008, defendants made approximately 3,000 trips across state lines. As during that same time period plaintiffs drove a total of 173 trips across state lines, defendants apparently distributed the remainder of the 3,000 out-of-state trips during that period to other drivers. This is further evidence that defendants were at all relevant times continuously engaged in interstate commerce.

work performed by plaintiffs on behalf of Sunset Logistics and Sunset Ennis.[8]

Defendants further contend that plaintiffs also engaged in interstate travel because they transported goods within Texas that originated out-of-state but were part of a "practical continuity of movement" in interstate commerce. Defendants' customer, TXI, ships construction materials from Oklahoma via railroad to its rail terminals in Texas. Plaintiffs transport the materials from the rail terminal to TXI's ready-mix plants in Texas. Such wholly intrastate travel can be considered the intrastate transport of goods in the flow of interstate commerce. See 28 C.F.R. § 782.7(b)(1); Merchants Fast Motor Lines, Inc., v. I.C.C., 528 F.2d 1042, 1044 (5th Cir. 1976). Under this definition of interstate commerce, all but four plaintiffs engaged in the transport of goods in interstate commerce. Plaintiffs dispute that the transport of such goods meets the standard for the intrastate transport of goods in the flow of interstate commerce. The court is inclined to agree with defendants that the transport of construction materials from the railroad terminals, where they were shipped from out-of-state, to

---

[8]As defendants point out, plaintiffs do not allege that they ever worked for any entity called "Sunset Trucking" or "Sunset Transportation," nor do they dispute that the bills of lading and trip tickets submitted by defendants represent transportation performed by plaintiffs.

their final destination within Texas, constitutes the practical continuity of movement in interstate commerce. Merchants Fast Motor Lines, Inc., 528 F.2d at 1044; Barefoot, 1994 WL 57686 at *3. As the court has concluded that plaintiffs actually transported goods across state lines or could reasonably have been expected to do so, the court need not resolve this issue.

IV.

Order

For the reasons discussed above, the court concludes that defendants have established their entitlement to the Motor Carrier Act exemption as to all plaintiffs. Therefore,

The court ORDERS that defendants' motion for summary judgment be, and is hereby, granted, and all claims and causes of action asserted by plaintiffs be, and are hereby, dismissed.

The court further ORDERS that plaintiffs' motion for partial summary judgment be, and is hereby, denied.

SIGNED July 15, 2009.

JOHN MCBRYDE
United States District Judge